Filed 2/23/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> DANIEL OLIVER MARES, <br><br>     Defendant and Appellant. | E080611 <br><br> (Super.Ct.No. FSB18002685) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Cheryl C. Kersey, Judge. Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

1

Daniel Oliver Mares appeals from an order denying his petition to vacate his voluntary manslaughter conviction and resentence him under Penal Code section 1172.6[1] (unlabeled statutory citations refer to this code). Mares pled guilty to voluntary manslaughter while facing a murder charge. The record of conviction includes the preliminary hearing transcript, where police recounted Mares's admissions that he stabbed the victim and acted alone. There is nothing in the record of conviction suggesting the involvement of an accomplice; the only murder theories supported by the record of conviction are theories where Mares was the actual killer and acted alone in stabbing the victim.

Mares asserts in his petition that he could not be convicted today "because of" changes made to the murder laws in 2019 legislation. (§1172.6, subd. (a)(3).) These changes eliminate murder liability only for some *accomplices* to killers, and only where the accomplices intended to aid a crime other than murder. The record of conviction, however, contains uncontradicted facts that refute Mares's assertion. We conclude a trial court can properly deny a petition at the section 1172.6, subdivision (c) prima facie hearing by relying on a record of a conviction that unambiguously precludes a conclusory assertion that the petitioner could not be convicted today because an accomplice liability theory of murder was invalidated. We therefore agree with the trial court that Mares failed to make a prima facie showing for relief and affirm the order.

---

[1] Mares filed his petition under former section 1170.95, which the Legislature later renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We will refer to section 1172.6 for consistency.

# I

# FACTS

Derek Coltrain died from multiple stab wounds inflicted on his face, shoulder, and torso. In a complaint, the district attorney charged Daniel Oliver Mares with murdering him. During a preliminary hearing, four police officers testified about the investigation, which included taking statements from Mares, his girlfriend Marina, and other eyewitnesses. Our factual summary recounts that testimony.

On July 12, 2018, police responded to reports of a stabbing in Redlands and discovered Coltrain lying in a parking lot with stab wounds and significant blood loss. He received treatment but died of his wounds.

Officers interviewed one witness who saw Coltrain and Mares arguing and a second witness who saw Mares running from the scene. Police also interviewed Mares's girlfriend of two years, Marina, who said she was with Mares during the killing. She said they argued with Coltrain about a bicycle she thought was stolen from her. She told police she and Mares saw the bicycle on the porch of a house, and they knocked on the door. Coltrain responded, and a second man invited Mares and Marina into the house. Coltrain became upset when accused of taking the bike and went out to the porch to check on it. Once outside, Coltrain became agitated, took off his shirt and said, "What's up?" Marina said Mares told Coltrain he did not want to fight and told him it was a misunderstanding, but Coltrain responded "Oh, we ain't going to fight. You're not even going to touch me when we're done." Coltrain then charged Mares, and Mares pulled a

knife from his pocket and stabbed Coltrain three or four times in the face and abdomen. She and Mares then fled, Marina on the bike and Mares on foot.

Mares too spoke with police after waiving his *Miranda* rights. His statement about the cause of the fight generally accorded with Marina's statement. He said Coltrain argued with Marina over the bike, and he tried to calm the situation. He admitted stabbing Coltrain several times, but he initially claimed Coltrain had attacked him with the knife. He said he blocked Coltrain's attempt to stab him and knocked Coltrain's knife to the ground. He retrieved the knife and stabbed Coltrain four or five times. When the detective told Mares he did not believe that part of his statement, Mares changed his story. He said he brought the knife to the fight and pulled it out of his pocket when Coltrain charged him. On cross-examination by Mares's lawyer, the detective conceded Mares's statement about who brought the knife was vague. Mares said he "must have" brought the knife, but then he claimed not to remember where he got the knife or how long he had possessed it. However, Mares consistently said Coltrain had attacked him and he had reacted and stabbed Coltrain. According to Mares, he believed "that in order to leave that porch, he would have to go through" Coltrain.

No evidence suggested anyone other than Mares physically fought with Coltrain or stabbed him.

At the end of the preliminary hearing, Mares was held to answer to a murder charge. The district attorney filed an information charging Mares with the murder of Coltrain and alleging Mares personally used a knife to commit the crime.

4

In August 2019, Mares pled guilty to voluntary manslaughter (§ 192, subd. (a)) with an enhancement for personal use of a deadly and dangerous weapon (a knife) (§ 12022, subd. (b)(1)) and eight counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)). Mares checked a box on the plea form stating he agreed there was a factual basis for the plea, but he specified no evidence that provided the factual basis.

The court sentenced Mares to 20 years in prison as agreed in the plea agreement, including 11 years for voluntary manslaughter, one year for the enhancement, and one year consecutive for each assault conviction.

In September 2022, Mares petitioned for resentencing under section 1172.6. Mares used a pre-printed form to allege three things that parroted the requirements of that statute: (1) an information was filed against him "that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on [his] participation in a crime"; (2) he was "convicted of murder, attempted murder, or manslaughter following a trial or . . . accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder"; and (3) he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." Mares did not support his petition with a declaration or other representation of the facts about the killing of Coltrain.

The court appointed counsel for Mares. The district attorney filed an informal response to the petition and argued Mares is ineligible for relief under section 1172.6 because he was the actual killer. The district attorney attached a copy of the information and the transcript of Mares's preliminary hearing, which we summarized above. Mares did not file a reply or otherwise address the claim that he was the actual killer.

The trial court held a hearing to determine whether to issue an order to show cause. Mares asked the court to determine he had made a prima facie showing and counsel submitted without argument. The district attorney asked the court to deny the petition summarily. "It's our position that even though it's the prima facie case and it's not a factual finding determination by the judge, [from] the preliminary hearing transcript, the Complaint, the Information and the plea, the Court can determine if the defendant was the actual killer and, therefore, not eligible." Asked for a response, Mares's counsel submitted.

The court concluded Mares "failed to make a prima facie showing for a hearing and resentencing. He has failed to state specific facts. Not only that, the Court has reviewed the preliminary hearing transcript, and it appears that the defendant is the actual killer and not entitled to relief." The court therefore denied the petition without setting a hearing under section 1172.6, subdivision (d), at which the People would have had the burden of proving, beyond a reasonable doubt, that Mares was guilty of murder or attempted murder under a still-valid theory of murder.

## II

## ANALYSIS

Mares argues the trial court erred by relying on the preliminary hearing transcript to engage in factfinding to determine he was the actual killer and by requiring him to state facts to justify holding a merits hearing. We conclude the trial court did not err.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), to "modify accomplice liability for murder and the felony-murder rule." (*People v. Gentile* (2020) 10 Cal.5th 830, 841.) To do this, it "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The purpose of the changes was "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see also *People v. Hurtado* (2023) 89 Cal.App.5th 887, 891 (*Hurtado*).)

The legislation thereby eliminated doctrines where accomplices could be held liable for murder while participating in a lesser crime (such as robbery or shooting at an inhabited building) with the actual killer. The now-eliminated natural and probable consequences doctrine had allowed an accomplice to be found guilty of murder if a "jury determined that he aided and abetted [a] target crime[] and that murder was a natural and probable consequence of the offense." (*People v. Reyes* (2023) 14 Cal.5th 981, 984.) The

7

felony-murder doctrine had allowed accomplices to be held liable for murder simply by participating in certain felonies with the killer. The limited doctrine now allows accomplices to a felony to be held responsible for a cohort's act of murder only if the accomplice "with the intent to kill" aided and abetted "the actual killer in the commission of murder in the first degree" or the accomplice was a "major participant in the underlying felony and acted with reckless indifference to human life." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).) The changes benefit some accomplices to murder but they never affect the murder liability of the killers.

Section 1172.6 is the new law's procedure allowing people convicted of murder under the old law to petition for an order vacating their convictions and resentencing them on remaining counts if they could not now be convicted because of the changes made to sections 188 and 189 by Senate Bill 1437. (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.) In 2021, the Legislature passed Senate Bill No. 775 2021-2022 Reg. Sess.), which expanded the scope of the new law to, among other things, "clarif[y] that persons who were convicted of attempted murder or manslaughter" are permitted relief as well as those convicted of murder. (Stats. 2021, ch. 551, § 1.)

To trigger further proceedings, a petition must allege three statutory conditions of eligibility are satisfied. As in this case, petitioners typically use a form with checkboxes next to statements that restate the language from subdivisions (1), (2), and (3) of section 1172.6, subdivision (a). It is uncontested that the first two items are satisfied here. The first alleges the petitioner faced charges allowing the prosecution to proceed under a

theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice.[2] The second alleges the petitioner was convicted of murder, attempted murder, or manslaughter or pled guilty when they could have been convicted of murder or attempted murder.

The third allegation, however, is critical here. It states the petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) As is typical with a checkbox form, the petition offers nothing more than this conclusory assertion.

The trial court appointed counsel for Mares (§ 1172.6, subd. (b)(3)), which required the prosecution to file a response within 60 days of service and allowed Mares an optional reply within 30 days. (§ 1172.6, subd. (c).) "After the parties are given an opportunity to submit briefs, [the court] 'shall hold a hearing to determine whether the petitioner has made a prima facie case for relief' and if the petitioner has done so, it must issue an order to show cause.' " (*Hurtado*, *supra*, 89 Cal.App.5th at p. 891 [quoting *People v. Basler* (2022) 80 Cal.App.5th 46, 55]; see also *People v. Flores* (2022) 76 Cal.App.5th 974, 985 (*Flores*).) At this stage, the trial court determined that Mares did not make a prima facie showing of eligibility and was not entitled to an order to show cause and an evidentiary hearing under section 1172.6, subdivision (d).

---

[2] A generic allegation of murder is sufficient to allow prosecution for felony murder or (previously) murder under the natural and probable consequences doctrine. (*People v. Nakahara* (2003) 30 Cal.4th 705, 712.)

9

This decision was correct, as Mares's conclusory assertion that he could not be convicted today "because of" the 2019 changes to sections 188 and 189 is refuted by uncontradicted facts in the record.

Our Supreme Court has explained the trial court may look to the record of conviction to determine whether the petitioner made the required prima facie showing that he could be among those who merit relief. (*Lewis*, *supra*, 11 Cal.5th at p. 970.) "The record of conviction," the Court explained, "will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

The Court warned that "the prima facie inquiry under subdivision (c) is limited," and the "prima facie bar was intentionally and correctly set very low." (*Lewis*, *supra*, 11 Cal.5th at pp. 971-972.) Yet the trial court's hands are not tied by the allegations in the petition. "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " (*Id.* at p. 971.)

The record contains facts refuting the petition's allegations. Mares pled guilty while the People were pursuing a murder conviction based only on a theory that he was the actual killer. Nothing in the record suggests Mares could have benefitted from Senate

10

Bill 1437's changes in the law. The changes to the law applied to accomplices. The legislature eliminated murder liability only for some convicts "who were neither the actual killers nor intended to kill anyone." (*Strong*, *supra*, 13 Cal.5th at p. 707.)

Any actual killer theory that Mares faced is still a valid theory today. That is true whether the People would have argued that he acted with express malice (see CALCRIM No. 520) or intended to commit only a particular felony under a felony murder theory (see CALCRIM No. 540A.) Senate Bill 1437 did not affect actual killer theories. The murder charge resulted in his guilty plea.

Rendered invalid, or altered, are some theories holding defendants responsible for murder when an accomplice is the killer. For Mares to assert that the changes to sections 188 and 189 would have rendered him not guilty under today's law, he must assert he would have defended himself by offering facts to support a murder theory that is now abrogated, but he did not do so because admitting that theory then meant he would have admitted he was guilty of murder. That is the only way he would be not guilty "because of" the changes in the law.

That is, Mares must assert (a) there was some other person who was the actual killer and (b) Mares acted in concert with this person in some way that rendered Mares guilty of murder under a now-abrogated theory of accomplice liability. Those abrogated theories (felony murder and natural and probable consequences) are offenses where Mares would have aided a second person in committing some other crime which resulted in the second person killing the victim, Coltrain. Mares must assert he would have

11

defended this case on the theory that he was guilty of only the lesser crime that he helped the killer commit, an argument unavailable to him at the time. That is the only way he would not be guilty "because of" the changes made by Senate Bill 1437.

The record of conviction contains " 'facts refuting the[se] allegations' " that justify our " 'making a credibility determination adverse to' " Mares's checkbox assertion. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The uncontradicted facts in the record of conviction make impossible the third allegation that Mares must make to establish a prima facie case. Other, significant, contradictory facts would need to be offered to have a basis to conclude that Senate Bill 1437 could have made a difference in Mares's decision to plead guilty.

The preliminary hearing transcript shows the basis on which the district attorney pursued the murder charge against Mares. Only an actual killer theory was offered. Our Supreme Court has stated that the transcript of a preliminary hearing, for some purposes, "reliably reflect[s] the facts of the offense for which the defendant was convicted." (*People v. Reed* (1996) 13 Cal.4th 217, 223.) "[T]he procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence. Those protections include the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings." (*Ibid.*)

Here, we need not credit the truth of any fact in the preliminary hearing transcript. What matters is that the record supports no theory other than those where Mares was the

12

actual killer, acting with no accomplice. Police officers who interviewed Mares said he admitted stabbing the victim but said he was defending himself from an attack. Not only was there no evidence in the preliminary hearing transcript to suggest anyone other than Mares was the actual killer, but there was no evidence that anyone other than Mares and the victim were involved in the knife fight. It does not matter whether any fact offered at the hearing was correct (for example, whether he brought the knife to the fight or not). No facts support a theory that he was an accomplice to a murder committed by some other person.

For the third allegation in his section 1172.6 petition, Mares must assert he cannot be convicted of murder today "because of" the Senate Bill 1437 changes. It is important to understand it is not relevant if Mares wished to claim (for instance) that he was misidentified and another person committed the crime. That was a defense that was available to him at the time of his plea. Senate Bill 1437 has no bearing on it. New evidence of misidentification could support a petition for a writ of habeas corpus, but it would not show that he cannot be convicted "because of" the changes to the law, as required by section 1172.6. Rather, for the Senate Bill 1437 changes to accomplice liability to have made a difference, Mares must assert he would have defended himself with a theory that he was guilty of assisting some other (heretofore unidentified) person with some other (heretofore unidentified) crime that resulted in that person killing the victim. If he could assert *that*, it would be a reason he could not be convicted of murder

today that was unavailable when he pled guilty. But no facts in the record support such an assertion. They contradict it.

It also does not matter whether the preliminary hearing evidence conclusively establishes Mares would have been found guilty of murder at trial. Had Mares gone to trial, he possibly could, for instance, have challenged the admission of his confession. (See, e.g., *People v. Avalos* (2022) 85 Cal.App.5th 926, 951-954 [overturning murder conviction based on admission of confession made without valid *Miranda* waiver].) He may instead have acknowledged he was the killer but argued self-defense or some other justification. (See, e.g., *People v. Schuller* (2023) 15 Cal.5th 237, 243 ["[u]nder the doctrine of imperfect self-defense . . . '[i]f a person kills . . . in the unreasonable but good faith belief in having to act in self-defense, the belief negates what would otherwise be malice, and that person is guilty of voluntary manslaughter' "].) These options were available to him at the time of his plea, without any change in the law. Mares did not plead guilty to murder, he instead pled to manslaughter, and perhaps a jury would have returned a manslaughter verdict if he had gone to trial. Arguing today that he could not be convicted of murder for any of these reasons would not show he cannot be convicted "because of the changes to Section 188 or 189" (§ 1172.6, subd. (a)(3)), which is what he needs to establish a prima facie case.

Because nothing in the record supports any way Mares could have been guilty of murder on an abrogated theory, rather than as the actual killer, we conclude the record of conviction establishes " 'facts refuting the allegations made in the petition,' . . .

[justifying] 'the court . . . in making a credibility determination adverse to the petitioner.' "[3] (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

In a situation like this one, where a petitioner pled guilty to resolve a murder charge based on the People's uncontradicted evidence that they were the actual killer, a court properly rejects a conclusory assertion that the person could not be guilty today "because of the changes to Section 188 or 189." (§ 1172.6, subd. (a)(3).) Because those changes apply to accomplices, any such claim would be unsupported by facts in the record and refuted by the facts showing the petitioner was the killer.

In contrast, the form petition's conclusory assertion *is* sufficient where the record contains a possibility that the defendant could have been guilty under a now-abrogated accomplice theory. Here, the record *forecloses* such a possibility. Mares would need some evidence to explain on what theory the record evidence could be disregarded in favor of one of the abrogated accomplice theories of murder. Absent here is any evidence of some other killer or any way Mares assisted that killer in committing some other crime, both necessary to show Mares pled guilty in 2019 when today he could have defended himself using facts that no longer constitute murder.

---

[3] The credibility determination here would be a rejection of the checkbox assertion that petitioner "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) We do not understand *Lewis* to suggest there are circumstances under which the trial court may make credibility determinations by weighing *conflicting evidence* in the record of conviction. Any such conflicts must be resolved in favor of the allegations in a petition.

15

It would require an unlikely situation for a petitioner to properly allege such facts after pleading guilty in the face of a murder charge based on uncontradicted evidence that they were the actual killer, but we need not foreclose the *possibility* of such a petition. We do not suggest all the People's preliminary hearing evidence was necessarily true. We simply recognize the absence of any theory, incompatible with the record, that the defendant was guilty of aiding and abetting an unidentified actual killer in a crime, other than murder, that led to the victim's death. We also need not now decide whether a petitioner in this position (after appointment of counsel per section 1172.6, subdivision (b)(3)) must attach some *evidence*, such as a declaration, to a petition to provide a prima facie basis for the claim that he would have defended himself based on facts proving a murder theory abrogated by Senate Bill 1437. Here, we do not even have an *assertion* by counsel as to the facts that would support Mares's claim that there was some other killer, and Mares's explanation for his claim that he aided that killer in some other crime that led to the murder. Finding a prima facie case in these circumstances indulges the possibility that Mares cannot assert facts that support the theory that he needs.

The statutory consequences of a successful petition reveal why it makes sense to require, for a prima facie case, that Mares offer some evidence that he was guilty of murder based on a theory that was valid before Senate Bill 1437 but is invalid today. If he establishes a prima facie case and prevails at an evidentiary hearing, the statute assumes there is some so-called "target" felony at issue—a felony, such as robbery, that Mares would have intended other than murder and during which Coltrain was killed by someone

16

else.[4] This is so because, if Mares prevails on his petition, the statute directs his manslaughter conviction "shall be redesignated as the target offense or underlying felony." (§ 1172.6, subd. (e).) The only exception is if the target offense also was charged; then he would just be resentenced on the remaining charges, including the target offense. (*Ibid*.)

This resentencing scheme makes sense for cases involving the abrogated theories of accomplice liability for murder. Those theories would involve Mares as a participant in some target offense that caused a murder committed by another person. Here, there was no different, underlying felony charged along with an accomplice's murder. Mares's assault which killed Coltrain was the only act. Mares pled guilty to manslaughter, but this is a lesser-included offense of murder rather than a "target" or "underlying" felony. Nor would it make any sense to have his manslaughter conviction "redesignated" as manslaughter. (*Ibid*.) The statutory scheme thus suggests the Legislature intended the prima facie showing requirement to work as we apply it today—to eliminate cases that do not involve the abrogated theories. As we interpret the statute, the trial courts may winnow meritless petitions filed in cases that do not involve these murder theories but only an actual killer theory. (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

Our analysis does not violate the prohibition on factfinding or weighing evidence when considering whether the record of conviction precludes a section 1172.6 prima

---

[4] Assault is not a felony that can underlie first degree felony murder. (§ 189.) Felonies that are "assaultive in nature" merged with the homicide and could not underlie second degree felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.)

facie case. (See *Lewis*, *supra*, 11 Cal.5th at p. 972 [while "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1172. 6,] subdivision (c)," "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "].) We are concluding only that uncontradicted facts in the record preclude Mares's assertion that Senate Bill 1437's changes mean he cannot be convicted of murder. We need not find or weigh any facts, because there are no facts to support Mares as the accomplice to another killer.

Other cases may involve factual findings that are conclusions from the mix of facts in a record. For instance, a finding of a defendant's intent, or a determination that he is a major participant in a crime, are conclusions from weighing facts. Findings like those could be disputed on the existing record by an argument that the existing facts should be weighed differently. Those existing facts also could be weighed differently if the record is supplemented by additional facts. But uncontradicted facts showing the defendant was the actual killer cannot be "weighed" to support the conclusion that he was an accomplice of someone else who killed. There also is ordinarily no reason to suspect that the record could be supplemented with other facts that could establish an accomplice theory of murder, whether an abrogated theory or not. Finding Mares pled a prima facie case involves *disregarding* all the facts rather than weighing any of them.

This conclusion adheres to our Supreme Court's guidance on how trial courts may use the record of conviction without straying into impermissible factfinding. Thus far,

that guidance has come in cases that have gone to trial. In two cases where the petitioner was convicted of murder as an accomplice to the killer, the Supreme Court established that jury findings are binding on a section 1172.6 petitioner under the doctrine of issue preclusion, and they may be sufficient to conclude a petitioner is not entitled to an evidentiary hearing. (*Strong*, *supra*, 13 Cal.5th 698; *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*).) Those jury findings do this only if they preclude the petitioner from showing that he was convicted on a theory that Senate Bill 1437 abrogated.

In *Strong*, the petitioner was convicted on a felony-murder theory after his accomplice shot and killed two people while they tried to rob a local drug dealer. (*Strong*, *supra*, 13 Cal.5th at p. 691.) The jury found Strong was a "major participant" in the robbery who acted "with reckless indifference to human life," findings which today would allow a conviction. (*Ibid.*) The Supreme Court agreed that issue preclusion is consistent with "the structure of the statute—which permits trial courts to consult the record of conviction to determine whether the defendant has made out a prima facie case of eligibility [citation], and which notably does not open resentencing to every previously convicted murder defendant." (*Id.* at 700.) But the findings in Strong's case did not satisfy the conditions for issue preclusion because they were made under a standard that had undergone a "significant change" since they were made. (*Id*. at p. 702.) The same findings made after that significant change "ordinarily establish a defendant's ineligibility for resentencing" and preclude a prima facie case for relief. (*Id*. at p. 697.)

In *Curiel*, the petitioner and a fellow gang member approached a rival gang, a conflict occurred, and the other man shot and killed the rival gang member. (*Curiel, supra*, 15 Cal.5th at p. 442.) The jury was instructed it could find Curiel guilty on either the now-abrogated natural and probable consequences doctrine or on the still-valid theory of direct aiding and abetting. The jury also found true a gang-murder special circumstance allegation (§ 190.2, subd. (a)(22)), which meant it found Curiel had intended to kill. (*Curiel*, at pp. 440, 452.) The Supreme Court held that finding was binding under the doctrine of issue preclusion. (*Id.* at p. 453.) The finding, however, did not preclude Curiel from showing he was convicted under an abrogated theory. A conviction under the still-valid direct aiding and abetting theory required that the jury find more than intent to kill—specifically, that Curiel "knew that the perpetrator intended to commit the crime[,] . . . intended to aid and abet the perpetrator in committing the crime[,] and . . . [his] words or conduct did, in fact, aid and abet the perpetrator's commission of the crime." (*Id.* at p. 447.) The record left open the possibility that the jury did not make those findings but instead convicted him on an abrogated theory, so Curiel made a prima facie case on his section 1172.6 petition. (*Curiel*. at pp. 463-464.)

But the Supreme Court has also shown us that a conviction on an actual killer theory leaves no room for the defendant to make a section 1172.6 prima facie case. In *People v. Delgadillo*, the Court held an error in handling Delgadillo's petition was harmless because the trial record established Delgadillo was the actual killer as well as the only participant in the killing. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233

20

(*Delgadillo*).) A jury had convicted Delgadillo of second degree murder under an implied malice theory because, having suffered previous drunk driving convictions, he killed a passenger in another vehicle by causing a collision while again driving under the influence. (*Id.* at pp. 222-223.) The Court concluded petitioner had not made a prima facie showing because the trial transcript "makes clear that Delgadillo was the actual killer and the only participant in the killing," and "defense counsel conceded that the accident occurred while Delgadillo was driving on the wrong side of the road." (*Id.* at p. 233.) Thus, according to the Supreme Court, a court may reject a petitioner's allegation that they could not now be convicted of murder or attempted murder—without straying into impermissible factfinding—if the trial transcript shows the petitioner was tried and convicted under a theory where he was the actual killer, at least where the theory was so clear that defense counsel's trial concession allowed for no other theory.

*Strong*, *Curiel*, and *Delgadillo* all were trials. In cases like this one that involve a guilty plea, issue preclusion *could not* apply. Entering a plea agreement forecloses actual litigation of the issues that would have been tried, as well as a final determination on the merits. (See *People v. Sims* (1982) 32 Cal.3d 468, 484 ["An issue is actually litigated '[w]hen it is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined*' "].) Rather than litigating and deciding the facts, the defendant acknowledges there is a factual basis for the conviction and accepts responsibility. Perhaps in some plea cases a petitioner would have admitted facts in affirming a factual basis for the plea. If the petitioner pleaded guilty admitting he was the

21

actual killer, that would demonstrate (much as in *Delgadillo*) that the Senate Bill 1437 changes to accomplice liability would not have made a difference. But here Mares was not specific about the factual basis for his plea. In fact, he did not plead guilty to murder at all, but to manslaughter.

But that this is a plea rather than a trial is no reason to disregard the statutory procedures. As the Supreme Court has repeatedly made clear, the structure of section 1172.6 shows the Legislature intended for the trial courts to winnow petitions, rejecting those without any merit at the prima facie hearing based on information contained in the record of conviction. (*Lewis*, *supra*, 11 Cal.5th at p. 971; *Delgadillo*, *supra*, 14 Cal.5th at p. 233; *Strong*, *supra*, 13 Cal.5th at p. 700; *Curiel*, *supra*, 15 Cal.5th at p. 464.) The same procedures apply to convictions after a plea when the defendant faced a murder charge as apply to convictions after a trial, including filing a petition, appointment of counsel, briefing, and a hearing on whether the petitioner has shown a prima facie case. (§ 1172.6, subds. (a)(2), (b).)

If a defendant who faced a murder charge before Senate Bill 1437 pled guilty and the record contains any indication he had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition. The record here, however, refutes the conclusory assertion that Mares cannot be convicted today "because of" Senate Bill 1437. No record evidence shows Mares was an accomplice, and uncontradicted record evidence shows he was the killer. With evidence foreclosing that Senate Bill 1437 could have made a difference here, and

22

no evidence supporting it, the record does not permit the assertion to be true. (See, e.g., *Delgadillo*, *supra*, 14 Cal.5th at p. 233 [concluding a petitioner could not be entitled to § 1172.6 relief where the record "makes clear that [the petitioner] was the actual killer and the only participant in the killing"].) The evidence does not allow for the existence of some other killer, and no facts suggest that Mares could have aided someone else in some other crime that resulted in the killing. As with applying a jury finding that precludes a prima facie case, we do not engage in improper weighing of evidence if we determine "the record of conviction refutes the factual allegations in [Mares's] petition." (*Curiel*, *supra*, 15 Cal.5th at p. 465.) The record allows no way for Senate Bill 1437's changes to accomplice liability for murder to have made a difference in Mares's case.

Our approach is in accord with, but somewhat different than, the approach taken in *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*), review granted June 28, 2023, S279670 and *People v. Pickett* (2023) 93 Cal.App.5th 982 (*Pickett*), review granted October 11, 2023, S281643. *Patton* and *Pickett* hold that a court may conclude a guilty-plea defendant *was* the actual killer from an uncontradicted preliminary hearing record, precluding a section 1172.6 prima facie case. We emphasize here, however, that the same uncontradicted record evidence refutes Mares's conclusory claim in his section 1172.6 petition that he would not be convicted today "because of" Senate Bill 1437. Our approach clarifies that no factfinding is needed to reject the petition, as a court need not find any individual fact in the preliminary hearing was true, only that the claim that Senate Bill 1437 could matter is unsupported by the record. Our approach also leaves

23

open the possibility (unlikely on most sets of facts) that a petitioner like Mares could replace his conclusory assertion with a declaration creating a factual issue by explaining there was another killer whom he assisted in a crime from which the murder resulted.

In *Patton*, investigating police officers testified at the preliminary hearing that they had watched the surveillance video of the killing and recognized Patton as the sole perpetrator. As the court emphasized, "Those officers were personally involved in the investigation of the shooting of Jackson, and they were subject to cross-examination at the preliminary hearing." (*Patton*, *supra*, 89 Cal.App.5th at p. 657.) The trial court determined Patton had not demonstrated a prima facie case for relief, because the record of conviction established, without contradiction, that Patton was "the sole and actual perpetrator" and therefore ineligible. The reviewing court agreed and rejected arguments that the court had engaged in impermissible factfinding because "[t]he sworn testimony of police officers, based on surveillance video of the crime, that Patton committed the shooting was and is uncontroverted. '[N]o factfinding, weighing of evidence, or credibility determinations' were or are necessary here. '[T]he record of conviction irrefutably establishes as a matter of law that' Patton was convicted as the actual perpetrator of the attempted murder." (*Id.* at p. 658.)

Similarly, in *Pickett*, the Court of Appeal endorsed the trial court's reliance on a preliminary hearing transcript to conclude petitioner pled guilty to acting as a sole perpetrator in a killing. "In response to the petition, the district attorney submitted, without objection, the preliminary hearing testimony of two witnesses who watched

24

Pickett as he confronted [the victim] . . . . They saw Pickett pull out a gun and fire a shot into the air. As the witnesses ran away, they heard one or two more shots, followed immediately by the sight of [the victim] on the ground with an apparent gunshot wound to his leg. . . . Although there is no testimony from anyone who saw Pickett fire the fatal shot, there is nothing to suggest that any other person was involved in the incident. The inference that Pickett acted alone and was the actual killer is uncontradicted and compelling." (*Pickett*, *supra*, 93 Cal.App.5th at pp. 989-990.)

*Pickett* emphasized that the Legislature included in the statute procedural protections to ensure petitioners would have a chance to respond to the prosecution's record citations and to point out any way in which the record of conviction shows abrogated theories of murder may have been in play. Even still, as in this case, petitioner's attorney "offered no evidence or argument that might have raised a factual issue." (*Pickett*, *supra*, 93 Cal.App.5th at p. 990.) "Under these circumstances, where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing for relief under section 1172.6." (*Ibid.*)

We agree with *Pickett and Patton* in that they establish a trial court may rely on undisputed facts in the record of conviction showing that the petitioner faced only a

theory that he was the actual killer. The undisputed evidence in the record of conviction identifies Mares as the person who stabbed the victim to death. The record contains no indication of the involvement of any other person in the killing or in the physical fight, and Mares has never explained, in the trial court or on appeal, how he could have been convicted as an accomplice. As stated earlier, for Mares to warrant relief "because of" Senate Bill 1437, he must assert that he would have defended himself on a now-abrogated theory of accomplice liability. If Mares could identify anything in the record of conviction suggesting there was some other person involved in the stabbing, then we could not, without impermissible factfinding, conclude his allegation that he could not be convicted now "because of" Senate Bill 1437 lacked any support.

We need not decide under what circumstances a petitioner could credibly contradict undisputed evidence from the record of conviction by asserting facts that would show he may be eligible for resentencing because he acted as an accomplice. Mares submitted no declaration asserting such facts. Even if his prima facie burden is only to assert what evidence he *would* introduce to establish how he might show he was an accomplice in a crime with someone else who killed the victim, Mares has not tried to do that. There is no basis for us to conceive of how he could not be guilty "because of" changes that Senate Bill 1437 made by eliminating some accomplice liability theories.

Mares relies on several cases where Courts of Appeal have reversed the trial courts for relying on portions of records of conviction to deny petitions at the prima facie hearing stage. But, as *Pickett* explained at length, those cases are distinguishable. (See

26

*Pickett*, *supra*, 93 Cal.App.5th at pp. 990-993.) Moreover, they align with the approach laid out here.

In *People v. Rivera*, grand jury testimony showed the defendant drove an accomplice to and from the scene of a gang related killing. (*People Rivera* (2021) 62 Cal.App.5th 217, 224-225.) Rivera pled guilty to second degree murder and stipulated the transcript of grand jury proceedings provided a factual basis for the plea. (*Id*. at p. 226.) Rivera later filed a resentencing petition arguing he could not now be convicted of second degree murder "because of the elimination of the natural and probable consequences doctrine" for murder, but the trial court denied it summarily because Rivera had "entered a plea to second degree murder with malice." (*Id.* at pp. 226-227.) The Court of Appeal held the trial court had erred in ruling summarily because, in briefing the petition, Rivera "offered a theory under which the evidence presented to the grand jury was consistent with his guilt of murder under the natural and probable consequence doctrine, based upon an intent to participate in a target offense of assault. [Citation.] In doing so, he created a factual dispute that cannot be resolved at the prima facie stage since nothing in the record definitively foreclosed his theory." (*Id.* at p. 239.) We would reach the same conclusion. Where the record of conviction would permit conviction under an abrogated theory, the trial court must issue an order to show cause and hold an evidentiary hearing. Here, the record is uncontested that Mares was the actual killer, and Mares did not offer a theory, either in the trial court or on appeal, under which the evidence pointed to his guilt on an abrogated theory.

Mares also argues the Court of Appeal rejected use of preliminary hearing transcript testimony in *People v. Cooper* (2020) 54 Cal.App.5th 106. To the contrary, in *Cooper* the trial court denied the petition *before the prima facie hearing* and *without appointing counsel* based on the preliminary hearing transcript. The Court of Appeal warned, "Our opinion should not be read to suggest that, had the trial court appointed counsel for Cooper and received briefing from the parties, it could not then rely on the preliminary-hearing transcript to deny the petition for failure to make a prima facie showing of entitlement to relief." (*Id.* at p. 125.) Here, the trial court did appoint counsel and allowed Mares opportunities in writing and in person at a hearing to identify how the evidence could support an abrogated theory of liability, but he declined to do so.

Mares relies on *Flores* for the proposition that relying on preliminary-hearing transcript testimony would involve the court in improper factfinding. In *Flores*, the People relied on the preliminary hearing testimony of a sheriff's deputy reporting that Flores said an accomplice shot the victim multiple times and beat him and that Flores may have accidentally run over the victim twice while leaving the scene. (*Flores*, *supra*, 76 Cal.App.5th at p. 991.) *Flores* did not hold that it was always improper to consider the preliminary hearing transcript as part of the record of conviction or that doing so necessarily embroils a trial court in factfinding. (*Id.* at pp. 989, fn. 11, 991.) Instead, it held that the deputy's testimony simply "[did] not establish petitioner's ineligibility for resentencing as a matter of law" because Flores's statements did not preclude the possibility that the accomplice was the actual killer, or that Flores aided and abetted his

28

accomplice without the intent to kill the victim. (*Id.* at p. 991.) As a result, the record of conviction did not "exclude the possibility that petitioner was, or could have been, convicted under the imputed malice theories eliminated by Senate Bill No. 1437." (*Ibid.*) If the evidence here could be interpreted in the same way, we would reach the same conclusion, but nothing suggests Mares could have been convicted or could have pled guilty under an implied malice theory.

For all these reasons, Mares has failed to make a prima facie showing that he is eligible for relief under section 1172.6, and the trial court did not err in denying his petition.

## III

## DISPOSITION

We affirm the order denying Mares's petition.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

RAMIREZ_____
        P. J.

McKINSTER_____
        J.

29